UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| NATIONAL UNION FIRE INSURANCE | § | |
| CO. OF PITTSBURG, PA, *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 3:13-CV-115 |
| | § | |
| SIEMENS ENERGY, INC., *et al*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

Plaintiffs are insurers that provide coverage for a power plant in Baytown, Texas. After a turbine failed at the plant, they paid for the resulting damage and were subrogated to the owners' claims against Defendant Siemens Energy, Inc., the turbine's designer and manufacturer. Plaintiffs filed suit against Siemens in state court, and Siemens promptly removed to this Court on the basis of diversity jurisdiction. Plaintiffs move to remand arguing that there is incomplete diversity since at least one Plaintiff, a subscriber to a Lloyd's of London policy insuring the power plant, is a resident of Siemens's home state of Florida. The Court has examined the briefing and argument of counsel, the applicable law, and the facts of the case, and now **GRANTS** Plaintiffs' motion to remand.

## I.   BACKGROUND

The Cedar Bayou Electrical Generation Facility is a power plant located at the western edge of Chambers County, in Baytown.[1]  It is owned and operated by subsidiaries of nonparties NRG Energy, Inc. and Optim Energy, LLC.  One of the plant's electricity generating units, Unit 4, is a natural gas combined cycle unit designed and built by Defendant Siemens.  Unit 4 consists of two Siemens 501 gas turbines, two heat recovery steam turbines, and one Siemens KN steam turbine.

According to Plaintiffs, in 2008, the plant's owners contracted Siemens to provide services "including, but not limited to, inspection and supervision of the Turbine installation for proper assembly, clearances, alignment and cleanliness, and to advise [the owners] of errors and/or omissions with respect to these services."  Docket Entry No. 1-4 at 5.  Siemens provided these services from at least May 2008 until March 2011, and received over $4.6 million in consideration.

In March 2011, the Siemens KN steam turbine failed during start-up with a "loss of vacuum and high vibration after reaching approximately 3,570 rpm," damaging the turbine's rotors and other equipment.  *Id.*  Plaintiffs allege that this failure was due to a misalignment of the couplings between some of the turbine's rotors and that the failure was aggravated by an error in the turbine's initial programming.  As a result of the turbine failure, the plant's owners suffered over

---

[1] Except where noted, the Court presents this background in accordance with the well-pleaded facts in Plaintiffs' state court petition.

$20 million in property damage and loss of business damages.  Plaintiffs allege they paid the owners that amount as a covered liability under the insurance policies and thereby became subrogated to the owners' claims against Siemens.  On March 11, 2013, Plaintiffs sued Siemens in state court alleging breach of contract and professional negligence.  Siemens removed to this Court on April 11, 2013.

## II.  THE JURISDICTIONAL STANDARD

Federal courts have diversity jurisdiction over actions removed from state court if complete diversity exists between the parties and the amount in controversy is more than $75,000.  28 U.S.C. §§ 1332; 1441(a).  The burden of establishing jurisdiction is on the removing party, *see St. Paul Reinsurance Co. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998), and "the basis on which jurisdiction depends must be alleged affirmatively and distinctly and cannot be established argumentatively or by mere inference."  *Getty Oil Corp. v. Ins. Co. of N. Am.*, 841 F.2d 1254, 1259 (5th Cir. 1988) (citation omitted).   Any doubts as to the propriety of removal should be construed strictly in favor of remand.  *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002) (citation omitted).

### III.   DISCUSSION

Siemens is a citizen of Delaware and of Florida for purposes of diversity jurisdiction.  Most of the Plaintiffs are insurance companies that are diverse from Siemens.  However, Plaintiffs also include a number of underwriters providing insurance coverage to the power plant through the Lloyd's of London insurance market.  Determining whether complete diversity exists thus requires the Court to address the "Lloyd's citizenship conundrum," *Corfield v. Dall. Glen Hills LP*, 355 F.3d 853, 859 (5th Cir. 2003), that is, whether the citizenship of every subscribing underwriter is relevant for diversity purposes or only the citizenship of a particular underwriter.

A fuller understanding of this issue requires some background on how the Lloyd's insurance market operates.  In brief, in the Lloyd's market, individual underwriters, or "Names," subscribe to provide insurance coverage on percentages of policy risk.  *Corfield*, 355 F.3d at 858.  Groups of Names often form into and act collectively through "Syndicates," unofficial associations that are "creature[s] of administrative convenience" but have no independent legal existence.  *Id.*  Each syndicate appoints a managing agent, usually a legal entity such as a company, which itself appoints an active underwriter to act on behalf of all of the syndicate's subscribing names.  *Id.* at 858–59.  For each policy at issue, an active underwriter from one of the subscribing syndicates is appointed as the lead underwriter, who

acts as the representative for all the underwriters subscribed to the policy. *Id.* In addition to acting as a representative, the lead underwriter subscribes to the insurance policy on its own behalf and typically assumes the most risk of any individual underwriter. *Id.* at 859.

The case law has established two rules for determining diversity jurisdiction in cases involving Lloyd's policies. First, a particular underwriter's citizenship is the only one relevant for determining diversity if the underwriter sues (or is sued) in its individual capacity.[2] *Id.* at 864–66. In such cases, it is typically the lead underwriter who brings suit individually, though it need not be. *See id*. at 859. If, by contrast, the lead underwriter sues or is sued in its capacity as the representative of all the underwriters in the syndicate, or if all the underwriters in the syndicate sue in their own right, then all underwriters are considered parties for diversity purposes.[3] *See NL Indus., Inc. v. OneBeacon Am. Ins. Co.*, 435 F. Supp. 2d 558, 564 (N.D. Tex. 2006); *Certain Underwriters at Lloyd's London v. Washington*, No. 09-3195, 2009 WL 5215927, at *4 (E.D. La. Dec. 28, 2009); *see also Underwriters at Lloyd's, London v. Osting–Schwinn*, 613 F.3d 1079, 1088–89 (11th Cir. 2010).

---

[2] When a single underwriter sues in its individual capacity, it must meet the $75,000 amount-in-controversy requirement based on its potential exposure in the case as underwriters are severally, but not jointly, liable. *See Underwriters at Lloyd's, London v. Osting–Schwinn*, 613 F.3d 1079, 1091 (11th Cir. 2010) (citations omitted).

[3] Although the Fifth Circuit has not yet specifically stated that this is the rule, *Corfield* implies that it is so, the post-*Corfield* case law is in agreement on it, and the parties do not dispute it.

The parties agree that the law creates this distinction, but disagree about which category applies to the pleading in this case.  In its notice of removal, Siemens treats the managing agents for the Lloyd's policies at issue as the plaintiffs, and contends diversity exists because they are all citizens of the United Kingdom.  In seeking remand, Plaintiffs contend that suit was brought in the name of all the underwriters who are members of the syndicates that issued the policies. According to an affidavit submitted by Plaintiffs, one of these individual underwriters, who shared 0.01181% of the risk for Hiscox Syndicate 33, was a resident of Florida both when the turbine failure occurred and when Plaintiffs filed suit.[4]  *See* Docket Entry No. 15-1 at 3.  Thus, if Plaintiffs' characterization of themselves is correct, there is incomplete diversity and this Court lacks subject matter jurisdiction.

Both a plain reading of the state court petition as well as an understanding of the roles of the various Lloyd's entities supports Plaintiffs' view that the

---

[4] Diversity jurisdiction is determined by the parties' residency at the time of filing.  But to have a stake in this case, the underwriter who was a citizen of Florida at the time of filing must have had a financial interest in the policy at issue by having been subscribed at the time that liability was incurred.  Plaintiffs' affidavit states that, "At the time of participation . . . Hiscox Syndicate 33 consisted of 1919 members. . . .   [T]he percentage share of the individual member participating . . . who was a resident of the State of Florida on June 15, 2010 and March 11, 2013, was 0.01181%."  Docket Entry No. 15-1 at 3.  This representation stating that the Florida underwriter was subscribed at the time of participation, which Siemens has presented no evidence to contradict, suffices to show that the Florida underwriter has a financial interest in this case.

citizenship of the underwriters, not the managing agents, should be considered in

determining diversity.  The state court petition describes the Plaintiffs as follows:

> Plaintiffs Certain Underwriters of Lloyd's London subscribing to
> policies of insurance issued by AEGIS Syndicate 1225, through its
> managing general agent, AEGIS Managing Agency Limited, Ascot
> Syndicate 1414, through its managing general agent, Ascot
> Underwriting Limited, Argenta Syndicate 2121, through its managing
> general agent, Argenta Syndicate Management Limited, Catlin
> Syndicate 2003, through its managing general agent, Catlin
> Underwriting Agencies Limited, and Hiscox Syndicate 33, through its
> managing general agent, Hiscox Syndicates Limited are subscribers to
> certain policies of insurance issued by the specific syndicates
> identified above.

Docket Entry No. 1-4 at 3.  By referring to themselves as "Certain Underwriters of

Lloyd's London subscribing to policies of insurance issued by" the different

syndicates "through" the managing agents, Plaintiffs brought suit on behalf of all

the underwriters subscribed to the Lloyd's policies, not on behalf of the managing

agents.

Aside from this clear language, it would make little sense for the managing

agents to be the Plaintiffs.  The managing agents are just that—agents—who

perform administrative functions for the underwriters, but who do not have a

financial stake in the policies.  *See Corfield*, 355 F.3d at 858–59 (explaining that

each syndicate has a managing agent responsible for underwriting the policies and

managing the investments, that the managing agent typically appoints one of its

employees to be the active underwriter, that the active underwriter from one of the

underwriting syndicates is appointed the "lead" underwriter on the policy at issue, and that the lead underwriter usually assumes the greatest amount of risk on the policy in its own capacity as an underwriter); *Osting–Schwinn*, 613 F.3d at 1089 (noting that "the Managing Agent is merely a fiduciary with no financial stake"). That is why when a single entity involved in a Lloyd's policy brings suit, it is "the lead underwriter [who] is often named specifically." *Osting–Schwinn*, 613 F.3d at 1083 (citing as examples *E.R. Squibb & Sons, Inc. v. Accident & Cas. Ins. Co.*, 160 F.3d 925 (2d Cir. 1998), and *Hilton Oil Transp. v. Jonas*, 75 F.3d 627 (11th Cir. 1996)); *see also Corfield*, 355 F.3d at 859 (noting that the plaintiff was the lead underwriter on the policy at issue with an individual share of 32.79%). Siemens does not cite any case in which the managing agent for a Lloyd's syndicate was the actual party, and doubt exists concerning whether the citizenship of managing agents who lack a financial interest in the policies would be considered if they were so named. *See* 6A Charles Alan Wright et al., Federal Practice & Procedure § 1553 (3d ed. 2010) ("As a general rule, a person who is an attorney-in-fact or an agent solely for the purpose of bringing suit is viewed as a nominal rather than a real party in interest and will be required to litigate in the name of the principal rather than in the agent's own name. . . .  But an agent who has an ownership interest in the subject matter of the suit (or a power coupled with an interest), which is a question to be answered under the applicable substantive law,

is a real party in interest.").[5]

For these reasons, "Certain Underwriters of Lloyd's London subscribing to policies of insurance," Docket Entry No. 1-4 at 3, are the Plaintiffs, and the citizenship of all of the underwriters must be considered in determining whether diversity jurisdiction exists.  *See NL Indus.*, 435 F. Supp. 2d at 564 (reaching this result); *Washington*, 2009 WL 5215927, at *5 (same); *see also Osting–Schwinn*, 613 F.3d at 1088–89 (same); *Steadfast Ins. Co. v. Certain Underwriters at Lloyd's London*, No. SACV 10-0528-DOC(RNBx), 2010 WL 3749263, at *4 (C.D. Cal. Sept. 21, 2010) (same).

Siemens's final attempt to avoid state court is an argument that Plaintiffs' affidavit did not sufficiently establish that the Florida underwriter actually has exposure on the policies that insured the power plant.  But Siemens did not allege in its notice of removal that there is complete diversity between itself and all the underwriters subscribing to the Lloyd's policies.  *See* Docket Entry No. 1 at 5 (alleging that the Lloyd's Plaintiffs other than the managing agents were "purely nominal parties" and making no allegation about their citizenship).  Moreover,

---

[5] Although the Sixth Circuit did find that only the lead underwriters' citizenships were relevant for diversity purposes in *Certain Interested Underwriters at Lloyd's, London v. Layne*, 26 F.3d 39, 43 (6th Cir. 1994), the Fifth Circuit rejected the *Layne* court's rationale in *Corfield*.  *See Corfield*, 355 F.3d at 860, 863.  Moreover, the *Layne* court's decision appeared to be based on a somewhat simplified understanding of the Lloyd's structure, as that court did not distinguish between the syndicate's managing agent, which is a fiduciary with no individual liability, and the syndicate's active or lead underwriter, which is a separate entity that is personally subscribed to the policy. *See Layne*, 26 F.3d at 42–44.

despite having the burden of establishing federal jurisdiction, it has not presented evidence to contradict Plaintiffs' affidavit stating that one of the individual Lloyd's underwriters subscribed to the Hiscox Syndicate 33 is a resident of Florida. Because Plaintiffs' pleadings and the uncontroverted evidence indicate that complete diversity does not exist, the Court finds that Siemens has not carried its burden to establish subject matter jurisdiction.[6]

It may seem odd, or even absurd, that the existence of federal jurisdiction in this case turns on a party who holds only a 0.01181% share of the risk on a syndicate that participated in the policy at issue. Then again, some think it makes no sense to even have diversity jurisdiction for cases like this one in which no party is known to be a citizen of Texas and thus the beneficiary of any local bias, to the extent such bias still exists in the state courts. *See* CHARLES ALAN WRIGHT, LAW OF FEDERAL COURTS § 24, at 152–53 (5th ed. 1994) (noting that the original diversity jurisdiction, section 11 of the Judiciary Act of 1789, only applied to suits "between a citizen of the State where the suit is brought, and a citizen of another State," for the obvious reason that there is no fear of prejudice against out-of-state

---

[6] At the scheduling conference and in a subsequent filing, Siemens requested that this Court allow it to conduct some jurisdictional discovery. *See* Docket Entry No. 26. But Siemens has not explained what evidence it might discover that would allow it to carry its burden of showing that jurisdiction exists. The Court thus denies Siemens's request because jurisdictional discovery should not "be undertaken when the party requesting such discovery can only suggest or speculate that the requested discovery will shed light on or resolve the issues pertaining to diversity of citizenship." *NL Indus.*, 435 F. Supp. 2d at 566.

defendants when "neither of the parties is a citizen of the forum state").  But this Court's task is to apply the law of diversity jurisdiction as it is, not as it should be.

## IV.    CONCLUSION

Because the Court does not have subject matter jurisdiction over this case, Plaintiffs' motion to remand (Docket Entry No. 14) is **GRANTED**.  This case is **REMANDED** to the 334th Judicial District Court of Chambers County, Texas.

**IT IS SO ORDERED**.

**SIGNED** this 1st day of July, 2013.

_____
Gregg Costa
United States District Judge